UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANKR PBC,<br><br>   Plaintiff,<br><br>v.<br><br>ZION WILLIAMSON, SHARONDA SAMPSON, LEE ANDERSON<br><br>   Defendants. | CIVIL ACTION NO.<br><br>SECTION<br><br>**COMPLAINT AND JURY DEMAND** |

## **COMPLAINT**

Plaintiff Ankr PBC ("Ankr"), by and through its undersigned counsel, files this Complaint and Jury Demand against Defendants Zion Williamson, Sharonda Sampson, and Lee Anderson.

## **INTRODUCTION**

1. This case involves a loan agreement (the "Agreement") entered into between Ankr PBC ("Ankr") and Zion Williamson, Sharonda Sampson, and Lee Anderson (collectively, "Defendants"), in which Ankr loaned $2 million to Defendants to allow them to fund certain Williamson real-estate and family business needs (the "Loan"). Defendants breached the Agreement when they failed to repay the Loan by the agreed upon maturity date.

## **PARTIES**

2. Plaintiff Ankr is a public benefit corporation formed under the laws of Delaware with its principal place of business in California. Ankr is a provider of Web3 and blockchain infrastructure services.

3.      Defendant Zion Williamson ("Williamson"), an individual, is a resident of Louisiana. Williamson is a professional basketball player currently playing for the New Orleans Pelicans (the "Pelicans"), a team in the National Basketball Association.

4.      Defendant Sharonda Sampson ("Sampson"), an individual, is a resident of Louisiana. Sampson is Williamson's natural mother.

5.      Defendant Lee Anderson ("Anderson"), an individual, is a resident of Louisiana. Anderson is Williamson's stepfather who held himself out to the public and to Ankr, at Williamson's direction and knowledge, as Williamson's business manager. On information and belief, Anderson raised Williamson from the age of two-years-old, and coached Williamson throughout his basketball career.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. § 1322, this Court has original jurisdiction over Plaintiff's claims based on the parties' diversity of citizenship and because the amount in controversy exceeds $75,000.

7.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b), and this Court has personal jurisdiction over each Defendant, because all Defendants are residents of the Eastern District of Louisiana, and the Agreement at issue was made and negotiated, at least in substantial part, in this District.

## FACTUAL ALLEGATIONS

8.      Ankr provides Web3 infrastructure to companies, projects, and others who are building on the blockchain. This includes supporting the transfer of information within and between blockchain networks, allowing customers to "stake" digital assets to validate network transactions, and other services. Ankr operates around the world, supporting a community of thousands of users.

9. In order to advertise and market its business, Ankr sought advertising and promotional opportunities with Williamson.

10. Beginning on or around May 2021, Ankr began engaging in discussions with Williamson regarding a potential individual sponsorship deal and broader business partnerships. Ankr and Williamson began discussing numerous ways in which they could work together, including by having Williamson serve as spokesperson for Ankr, and other promotional partnerships.

11. During the course of those negotiations, Anderson held himself out and represented to Ankr that he was Williamson's business manager. Williamson manifested and confirmed that Anderson was his business manager and referred Ankr to Anderson for further negotiations on the business partnerships. Both Williamson and Anderson told Ankr representatives that Anderson was authorized to negotiate on behalf of Williamson and represent Williamson in his business interests.

12. While negotiations were proceeding, Ankr provided a variety of services for the benefit of Williamson, coordinated through Anderson. Ankr organized local media for community events and identified a physical trainer and a personal chef to provide services for Williamson. Ankr coordinated these arrangements directly with Anderson for Williamson's benefit. Ankr also witnessed Anderson negotiating business deals with other prospective partners for the benefit of Williamson.

13. Based upon those manifestations and representations by Williamson and Anderson about Anderson's authority to engage on behalf of Williamson, Ankr reasonably believed that Williamson actually authorized Anderson to negotiate with Ankr on his behalf, including for a potential sponsorship deal and other business arrangements.

14. In addition, based on Williamson's statements to Ankr, Ankr reasonably believed that Anderson possessed the authority to negotiate business arrangements for Williamson. On numerous occasions, Williamson told representative of Ankr that Anderson was his business manager and was authorized to negotiate on his behalf. Williamson specifically told Ankr representatives that Anderson was responsible for making business decisions for him, and that Ankr should negotiate any and all business-related transactions with Anderson. Ankr relied on these statements in their dealings with Anderson.

15. On or about May 15, 2021, which was during the time that Ankr was negotiating with Williamson, Anderson approached Ankr and asked to be paid a $150,000 fee (the "Fee Agreement"), which Ankr paid Anderson on or about June 9, 2021. Anderson said that the payment of the Fee was required for him to negotiate a business relationship with Williamson, and that paying the Fee to Anderson would ensure that he would cause Williamson to consummate a business relationship with Ankr.

16. Later in 2021, as Ankr, Anderson, and Williamson continued to discuss potential business relationships, Anderson approached Ankr and requested that Ankr extend Defendants a loan of two million U.S. Dollars ($2,000,000), to serve as a bridge loan for certain investments for Williamson and the Williamson family. Anderson represented that the Loan was urgently needed, as the family had taken on expensive investments including the purchase of certain real estate in New Orleans and could not meet their obligations due to the temporary suspension of payments from Williamson's sponsorship deals resulting from an injury. Anderson said that Ankr needed to grant the Loan immediately or Williamson and his family would suffer financial hardship, and Williamson would not enter into a business relationship with Ankr. Anderson told Ankr that the

Loan was for family business expenses and investments, all of which directly benefited Williamson but also Sampson and Anderson.

17. Ankr agreed to make the loan on or about September 21, 2021, on the condition that it be repaid by or before August 21, 2022. The Agreement was reached orally, and no loan documentation was prepared or signed by any of the parties at that time.

18. Ankr funded the Loan in a series of four separate wire transfers from Ankr's bank account(s) to the account of Sampson.

19. Following the extension of the Loan, Ankr continued to negotiate potential business relationships with Williamson, both directly and through Anderson, although none were ever formally consummated. On numerous occasions, Williamson and Anderson both acknowledged the existence of the Loan and promised that it would be repaid.

20. Beginning on or about August 1, 2022, Defendants began to request a series of two-week extensions to repay the loan, which Ankr granted. As consideration for granting these extensions, on or about November 2011, Ankr demanded to modify the terms of the Loan to provide for ten percent (10%) per annum interest, beginning from the establishment of the Loan. Defendants agreed to this modification and acknowledged in writing through text messages that in addition to the $2 million in principal owed, the interest was also due and owing.

Figure 1 – Text Message Between Lee Anderson and Ankr Representative



21. During late summer and fall of 2022, Defendants promised on multiple occasions, both in writing and orally, that repayment was forthcoming "immediately," only to offer excuses for non-payment and request further extensions.

22. In November 2022, Anderson again acknowledged the debt, including the accrued interest, to Ankr, and represented that he would make good faith interest payments under the Agreement and tendered a check to Ankr for $25,000.00. The $25,000 check delivered by Mr. Anderson was returned for insufficient funds, which resulted in Ankr suffering fees for the bounced check in the amount of $2,500.

23. Anderson began to make payments via PayPal. However, forgetting that he made one such payment, he called his bank to dispute the charges which caused $2,800.00 to be frozen in PayPal and Ankr's account to be suspended.

24. In January 2023, Ankr ceased providing extensions and demanded repayment of the Loan. On January 20, 2023, counsel for Ankr sent a letter to counsel for Defendants outlining the Loan and Defendants' default. The January 20, 2023, letter is attached as Exhibit A.

25. On April 24, 2023, Ankr entered into a Forbearance Agreement with Anderson and Sampson, pursuant to which they agreed that expressly acknowledged the Loan, and that they were in default under the Loan. Ankr agreed to forbear seeking repayment of the Loan, including through litigation. In return, Anderson and Sampson agreed to pay $500,000 toward the Loan on or before April 25, 2023, and to repay the remaining balance no later than July 6, 2023. The Forbearance Agreement is attached as Exhibit B.

26. On April 25, 2023, Defendants wired $500,000 from Sampson's account to Ankr's account, consistent with the Forbearance Agreement.

27. Defendants failed to repay the remaining outstanding balance on the Loan by July 6, 2023. Under the Forbearance Agreement, Ankr's forbearance immediately and automatically ceased upon Defendants' failure to remit the remaining balance on the Loan.

28. On July 7, 2023, Anderson contacted representatives for Ankr and represented that he would imminently pay off the Loan. Ankr demanded that at a minimum Anderson and Sampson execute a Promissory Note confirming the terms of the Loan.

29. Anderson executed the Promissory Note, dated July 7, 2023, a copy of which is attached as Exhibit C. Among other things, the Promissory Note confirmed the 10% per annum interest rate.

30. As Anderson repeatedly represented that the Loan would be repaid, Ankr sent a series of payoff letters, the last of which was dated July 24, 2023. As of that date, the amount owed under the Loan, inclusive of interest, was $1,839,273.84. A copy of the July 24, 2023 payoff letter is attached as Exhibit D. Interest continues to accrue.

## COUNT ONE

### Breach of Contract (All Defendants)

31. Ankr realleges and incorporates herein paragraphs 1-30.

32. On or about September 21, 2021, Ankr and Defendants entered into the Agreement via which Ankr extended Defendants a business loan of $2,000,000 with a maturity date of August 21, 2022; the Agreement was later modified to provide for an interest rate of 10% per annum and memorialized via the Forbearance Agreement and Promissory Note.

33. Anderson had actual and apparent authority to negotiate and execute the Loan on behalf of himself, Williamson, and Sampson. Specifically, as alleged above, Williamson presented Anderson to Ankr as being not only his stepfather, but also his business manager. And both Williamson and Anderson told Ankr representatives that Anderson was authorized to negotiate on behalf of Williamson and represent Williamson in his business interests.

34. Ankr has fully performed under the Agreement.

35. Defendants failed to make payment of the outstanding principal or interest by the maturity date, as extended, and thus are in breach.

36. Accounting for the April 23, 2023, payment of $500,000, Ankr has been damaged in the amount of at least $1,839,273.84, including the unpaid loan principal and accrued interest, but not including attorney's fees and costs of collection as provided in the Promissory Note.

## COUNT TWO

### Unjust Enrichment, in the alternative to Count I (All Defendants)

37. Ankr realleges and incorporates herein paragraphs 1-36.

38. Defendants Williamson, Sampson, and Anderson were enriched in that they received $2,000,000, which they used for their various real estate and other ventures.

39. Ankr provided Defendants with the $2,000,000 with the expectation of repayment.

40. Except for the April 25, 2023, payment of $500,000, negotiated as part of the Forbearance Agreement, Defendants failed to make any meaningful repayment on the $2,000,000, nor the interest accrued thereon.

41. The transfers of funds from Ankr to Defendants was not meant to be gratuitous.

42. Should the court find that there is no valid agreement, Ankr lacks any other remedy at law to recover the funds paid.

## COUNT THREE

### Breach of Contract (Lee Anderson)

43. Ankr realleges and incorporates herein paragraphs 1-42.

44. On or about May 15, 2021, Ankr and Anderson entered into the Fee Agreement whereby Ankr agreed to pay Anderson $150,000 in exchange for Anderson successfully negotiating a business relationship with Zion.

45. Ankr has fully performed under the Fee Agreement.

46. Anderson failed to cause Williamson to consummate a business relationship with Ankr, and thus is in breach.

47. Ankr has been damaged in the amount of at least $150,000.

## COUNT FOUR

### Unjust Enrichment, in the alternative to Count III (Lee Anderson)

48. Ankr realleges and incorporates herein paragraphs 1-47.

49. Defendant Anderson was enriched in that he received $150,000.

50. Ankr provided Anderson with the $150,000 with the expectation that he would cause Williamson to consummate a business relationship with Ankr.

51. Anderson failed to cause Williamson to consummate a business relationship with Ankr.

52. The Fee was not meant to be gratuitous.

53. Should the court find that there is no valid agreement, Ankr lacks any other remedy at law to recover the funds paid.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ankr PBC prays for the following relief:

a. Judgment entered in favor of Plaintiff and against Defendants on Count I of Plaintiff's complaint for breach of contract, and an award of compensatory damages not less than $1,839,273.84 plus interest to and through the date of repayment; or

b. In the alternative, judgment entered in favor of Plaintiff and against Defendants on Count II of Plaintiff's complaint for unjust enrichment, and an award of at least $1,839,273.84 in damages; and

c. Judgment entered in favor of Plaintiff and against Defendant Anderson on Count III of Plaintiff's complaint for breach of contract, and an award of compensatory damages not less than $150,000; or

d. In the alternative, judgment entered in favor of Defendant Anderson on Count IV of Plaintiff's complaint for unjust enrichment, and an award of at least $150,000 in damages.

e. An award of pre-judgment interest, attorney's fees, costs and post-judgment interest in favor of Plaintiff and against Defendants; and

f. Such further relief as this Court may deem appropriate.

Respectfully submitted,

Robert E. Kerrigan, Jr. (#07350)
Raymond C. Lewis (#31236)
Justine M. Ware, (#40540)
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA 70130
(504) 581-5141

rek@deutschkerrigan.com
rlewis@deutschkerrigan.com
jware@deutschkerrigan.com

*Attorneys for ANKR PBC*