UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANKR, PBC | CIVIL ACTION NO.: 23-2746 |
| v. | SECTION "E"(5) |
| ZION WILLIAMSON, SHARONDA SAMPSON, and LEE ANDERSON. | JUDGE SUSIE MORGAN |
| | MAGISTRATE MICHAEL NORTH |

**ANKR, PBC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff, ANKR, PBC, (hereinafter "Ankr"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves for summary judgment seeking a judgment on the promissory note and forbearance agreement between the parties in favor of ANKR, PBC. Defendants Sharonda Sampson and Lee Anderson have failed to pay back the outstanding balance on a $2 million loan they borrowed from Ankr in late-2021. Based on the undisputed promissory note and forbearance agreement, Ms. Sampson and Mr. Anderson have no defense to payment, and a judgment in favor of Ankr should be entered in the amount of $1,839,273.84, plus interest through the date of repayment, against Mr. Lee Anderson and Ms. Sharonda Sampson as solidary obligors.

I.  **FACTUAL BACKGROUND.**

A.  **General Factual Background**

In May 2021, Ankr began engaging in discussions with Zion Williamson regarding a potential sponsorship deal and broader business partnerships. [Exhibit 1, Declaration of Yunfan ("Chandler") Song ("Song Decl."), ¶ 3.] Ankr and Mr. Williamson discussed a variety of ways they could work together including having Mr. Williamson serve as a spokesperson for Ankr along

with other promotional partnerships. [*Id*.] Considering Mr. Williamson is a popular NBA superstar, Ankr was excited about the potential business partnership opportunities. [*Id*.]

During these negotiations Lee Anderson, Mr. Williamson's stepfather, held himself out and represented to Ankr that he was Mr. Williamson's business manager. [Ex. 1, Song Decl. ¶ 4.] On numerous occasions, Mr. Williamson told a representative of Ankr that Mr. Anderson was his business manager and was authorized to negotiate on his behalf. [*Id.*] Mr. Williamson specifically told Ankr representatives that Mr. Anderson was responsible for making business decisions for him, and that Ankr should negotiate any and all business-related transactions with Mr. Anderson. Ankr relied on these statements in their dealings with Mr. Anderson. [Ex. 1, Song Decl. ¶ 5.]

While negotiations were proceeding, Ankr provided a variety of services for the benefit of Mr. Williamson, coordinated through Mr. Anderson. Ankr organized local media for community events and identified a physical trainer and a personal chef to provide services for Mr. Williamson. [Ex. 1, Song Decl. ¶ 6.] Ankr coordinated these arrangements directly with Mr. Anderson solely for Mr. Williamson's benefit. [*Id.*] Ankr also witnessed Mr. Anderson negotiating business deals with other prospective partners for the sole benefit of Mr. Williamson. [*Id.*]

Based upon those manifestations and representations by Mr. Williamson and Mr. Anderson about Mr. Anderson's authority to engage on behalf of Mr. Williamson, Ankr reasonably believed that Mr. Williamson actually authorized Mr. Anderson to negotiate with Ankr on his behalf, including for a potential sponsorship deal and other business arrangements. In addition, based on Mr. Williamson's statements to Ankr, Ankr reasonably believed that Mr. Anderson possessed the authority to negotiate business arrangements for Mr. Williamson. [Ex. 1, Song Decl. ¶ 7.]

On May 15, 2021, during these negotiations, Mr. Anderson approached Ankr and asked to be paid a $150,000 fee, which Ankr paid on or about June 9, 2021. [Ex. 1, Song Decl. ¶ 8.] Mr.

2

Anderson said that the payment of the "fee" was required for him to negotiate a business relationship with Mr. Williamson, and that paying the "fee" to Mr. Anderson would ensure that he would cause Mr. Williamson to consummate a business relationship with Ankr. [*Id.*]

**B.     Undisputed Facts Pertinent to this Motion for Summary Judgment.**

Later in 2021, Mr. Anderson approached Ankr and requested that Ankr extend a loan of two million dollars ($2,000,000.00) to Mr. Williamson, Ms. Sharonda Sampson, Mr. Williamson's mother, and Mr. Anderson to serve as a bridge loan for certain investments the family wanted to make (hereinafter the "Loan"). [Ex. 1, Song Decl. ¶ 9.] On or about September 21, 2021, Ankr agreed to make the Loan on the condition that it be repaid by or before August 21, 2022. [Ex. 1, Song Decl. ¶ 10.] Given that Mr. Williamson had signed an NBA contract worth over $100 million dollars and the good working relationships and friendships that had developed between the parties, this agreement was reached orally and no documentation was prepared or signed by the parties at that time. [*Id.*]

Over a series of four payments in late-2021, Ankr wired $2 million directly to Ms. Sampson's bank account. [Ex. 1, Song Decl. ¶ 11.]

In 2022, Mr. Williamson, Ms. Sampson, and Mr. Anderson requested extensions of their repayment deadline and promised repeatedly, both orally and in writing, that repayment was forthcoming. [Ex. 1, Song Decl. ¶ 12.] After failed attempts to make payment, in January 2023, Ankr ceased providing extensions and demanded repayment of the loan. [Ex. 1, Song Decl. ¶ 13.]

After the failed attempts to make payment, Mr. Williamson, Ms. Sampson, and Mr. Anderson conveniently changed their story and began to claim that Mr. Williamson never knew anything about the Loan or that Ms. Sampson and Mr. Anderson had received and failed to repay a $2 million loan from Ankr. [Ex. 1, Song Decl. ¶ 14.]

On April 24, 2023, Ankr entered into a Forbearance Agreement with Mr. Anderson and Ms. Sampson, pursuant to which they both expressly acknowledged the Loan and that they were in default. The following admissions were included in the Forbearance Agreement and are undisputed:

1. "WHEREAS, Borrowers owe Lender the principal amount of Two Million and no/100 Dollars ($2,000,000) pursuant to an oral agreement between the parties (the "Loan Agreement"), a portion of which has been paid

2. "<u>Acknowledgment of Loan Agreement</u>. [Mr. Anderson and Ms. Sampson] acknowledge that the Loan Agreement exists and that the amount referenced in the first Whereas is owed and due to [Ankr] under the Loan Agreement, less any amounts paid by [Mr. Anderson and Ms. Sampson] to [Ankr] to date.

3. <u>Acknowledgment of Default</u>. Borrowers acknowledge that they are in default under the Loan Agreement and that Lender has the right to pursue its remedies under the Loan Agreement, including, but not limited to, seeking to collect the full amount owed.

[Ex. 1, Song Decl. ¶¶ 15-16, Exhibit A to Song Decl.] Ankr agreed to forbear seeking repayment of the Loan through litigation, and in return Ms. Sampson and Mr. Anderson agree to pay $500,000 toward the Loan by April 25, 2023, and to repay the remaining balance by July 6, 2023. [*Id.*]

The $500,000 was paid timely, however, Ms. Sampson and Mr. Anderson failed to repay the remainder of the Loan by July 6, 2023. [Ex. 1, Song Decl. ¶ 16.]

On July 7, 2023, Mr. Anderson executed a Promissory Note confirming multiple aspects of the Loan, including but not limited to:

- the existence of a Loan and its principal amount of $2 million,
- a 10% per annum interest rate,
- a maturity date of August 21, 2023,
- his being "in default" of the Loan and Forbearance Agreement, and
- his owing Ankr an outstanding principal amount of $1,500,000 plus any accrued but unpaid interest.

[Ex. 1, Song Decl. ¶ 18, Exhibit B to Song Decl.] Under Section 11 of the Promissory Note, Mr. Anderson then agreed to deliver to Ankr a mortgage over his real property at 1331 First Street, New Orleans, LA, to and for the benefit of Ankr. [*Id.*] Ms. Sampson indicated she would also sign the Promissory Note, but she backed out. [*Id.*]

On July 25, 2023, after exhausting all efforts to work out repayment amicably, Ankr filed this lawsuit against Mr. Williamson, Ms. Sampson, and Mr. Anderson for the unpaid balance of the Loan. [R.D. 1]

**II.    LAW AND ARGUMENT**

    **A.    Summary Judgment Standard.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. PRO. 56(a). A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Suffal v. Parish*, 2024 WL 2194158 (E.D. La. May 11, 2015) (citing *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995)).

Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v.*

5

*Catrett,* 477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial." *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). An "argued existence of a factual dispute will not defeat a properly supported motion for summary judgment." *Boudreaux v. Banctec, Inc*., 366 F.Supp.2d 425, 430 (E.D. La. 2005).

### B.     This is a purely legal issue that can be decided on summary judgment.

Lawsuits on promissory notes are appropriate questions for summary judgment. *FDIC v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir. 1988). A *prima facie* case on a promissory note is established when the "plaintiff alleges that it is the holder and owner of the note and that the note is in default." *United States v. Nelson*, 821 F.Supp. 1137, 1138 (W.D. La. 1993) (citing *American Bank v. Saxena*, 553 So.2d 836, 842 (La. 1989)). The burden then shifts to the defendant to establish the nonexistence, extinguishment or variance in payment of the obligation. *United State v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975).

Because Ms. Sampson and Mr. Anderson have acknowledged the Loan Agreement and are signatories to the Forbearance Agreement, this Motion for Summary Judgment is limited to their obligations under the agreement. Per the terms of these agreements, Ankr is entitled to a money judgment against Ms. Sampson and Mr. Anderson obligating either one to pay the past-due balance of the Loan and amount owed under the Promissory Note.

At this time, Ankr reserves its right to continue to pursue recovery against Mr. Williamson as the facts related to his knowledge of the Loan and his approval are disputed. As such, this motion for summary judgment does not extend to Mr. Williamson.

### C. There are no factual disputes with respect to the obligations owed by Defendants Lee Anderson and Sharonda Sampson.

The facts of this case are clear and simple. Ankr loaned Mr. Anderson and Ms. Sampson $2,000,000.00 for marketing and advertising business opportunities with their son, Zion Williamson. Mr. Anderson and Ms. Sampson have signed multiple documents acknowledging this Loan and the unpaid debt. They have even made partial payments towards this unpaid debt. Yet, Mr. Anderson and Ms. Sampson have failed to repay this debt.

There is no question that Ankr is owed a repayment of the money it loaned to Mr. Anderson and Ms. Sampson. In fact, both Mr. Anderson and Ms. Sampson have acknowledged this debt and their failure to repay the Loan. In signing the Forbearance Agreement, Mr. Anderson and Ms. Sampson acknowledged that they borrowed $2,000,000.00 from Ankr. They also acknowledged their duty to repay the principal amount of $2,000,000.00 in addition to a 10% per annum interest on all unpaid portions of the Loan. Mr. Anderson and Ms. Sampson failed to repay the Loan under the schedule of payment set forth in the Forbearance Agreement. [*See* Ex. 1, Song Decl., Exhibits A and B.]

As a result of that failure, Mr. Anderson executed a Promissory Note again acknowledging the outstanding balance of the Loan along with the 10% per annum interest rate. *Id*. The Promissory Note also expressly acknowledges Mr. Anderson's and Ms. Sampsons' default under the Loan Agreement due to their failure to repay the loan amount. [*Id*.] Ankr is the holder and owner of the Promissory Note. Mr. Anderson's admission in the Note of his default under the Loan further makes this issue ripe for summary judgment.

It is undisputed that Mr. Anderson and Ms. Sampson are indebted to repay to Ankr a principal amount of $1,839,273.84, plus interest through the date of repayment which can be calculated upon entry of a final judgment.

It is entirely unnecessary to go to trial on the issue of the money still owed by Mr. Anderson and Ms. Sampson. Binding and enforceable contracts exist evidencing their obligations to pay back the money they borrowed from Ankr. The outstanding debt owed under and the enforceability of those contracts is not disputed. Accordingly, there are no remaining issues of material fact that need to be determined by the factfinder at trial. Ankr is entitled to judgment on these issues against Mr. Anderson and Ms. Sampson as a matter of law.

### III. CONCLUSION

A Judgment should be rendered in favor of Ankr based on the Loan Agreement, the Forbearance Agreement, and the Promissory Note providing an executable money judgment in the amount of $1,839,273.84, plus interest through the date or repayment, against Mr. Lee Anderson and Ms. Sharonda Sampson as solidary obligors.

Respectfully submitted,

**Certificate of Service**

*/s/ Raymond C. Lewis*
Robert E. Kerrigan, Jr. (#07350)
Raymond C. Lewis (#31236)
Justine M. Ware (#40540)
**DEUTSCH KERRIGAN, L.L.P.**
755 Magazine Street
New Orleans, LA  70130
Telephone:  504-593-0697
rek@deutschkerrigan.com
rlewis@deutschkerrigan.com
jware@deutschkerrigan.com
*Attorneys for ANKR, PBC*

I HEREBY CERTIFY that on the 6th day of July, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Raymond C. Lewis*
Raymond C. Lewis